1

2

3

4

5

6

7

8

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10  REYNALDO D. VINLUAN, an individual,

Plaintiff,

Case No. 2:10-cv-1289

11

v.

CERTIFICATE OF STATE COURT
RECORD

12

13  FIDELITY NATIONAL TITLE AND
ESCROW COMPANY, a Washington
corporation; UNITED PACIFIC MORTGAGE,
d/b/a AVENTUS, INC., a Washington
corporation; SAXON MORTGAGE SERVICE,
INC., a Texas corporation, OCWEN LOAN
SERVICING, a Florida corporation;
DEUTSCHE BANK NATIONAL TRUST
COMPANY AS TRUSTEE FOR
REGISTERED HOLDERS OF MORGAN
STANLEY ABS CAPITAL I INC. TRUST
2007-NC3 MORTGAGE CERTIFICATES
SERIES 2007-NC-3, a Delaware corporation;
REGIONAL TRUSTEE SERVICE
CORPORATION, a Washington corporation;
and MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., a
Delaware corporation,

(King County Case No.: 10-2-27688-2 SEA)

14

15

16

17

18

19

20

21

22

Defendants.

23

CERTIFICATE OF STATE COURT FILINGS – 1

**FIDELITY NATIONAL LAW GROUP**
**A Division of Fidelity National Title Group, Inc.**
**1200 – 6TH AVENUE, SUITE 1900**
**SEATTLE, WA  98101**
**(206) 223-4525**

1    Pursuant to Local Civil Rule 101(b), Defendant Fidelity National Title and Escrow

2  Company attaches all documents filed in the underlying King County, Washington Superior

3  Court Case No. 10-2-27688-2 SEA.

4  Dated: August 11, 2010                    */s/ Matthew Cleverley*

Matthew R. Cleverley, WSBA #32055

5                                          Fidelity National Law Group

A Division of Fidelity National Title Group, Inc.

6                                          1200 – 6th Avenue, Suite 1900

Seattle, WA  98101

7                                          (206) 223-4525, ext. 103

Matthew.Cleverley@fnf.com

8                                          Attorney for Fidelity

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

CERTIFICATE OF STATE COURT FILINGS – 2

1

2

## CERTIFICATE OF SERVICE

3       The undersigned certifies under the penalty of perjury under the laws of the State of
Washington that I am now and at all times herein mentioned, a citizen of the United States, a

4  resident of the State of Washington, over the age of eighteen years, not a party to or interested
in the above-entitled action, and competent to be a witness herein.

5       On the date given below I caused to be served the foregoing document on the
following individuals in the manner indicated:

6

7  Richard Llewelyn Jones                          _X_  U.S. Mail, proper postage affixed
Richard Llewelyn Jones, P.S.                     ___  Legal Messenger
1050 112th Ave NE, Suite 230                      ___  Facsimile

8  Bellevue  WA  98004                             ___  Hand Delivery

9

10

11  Dated: August 11, 2010                         */s/ Matthew Cleverley*_____
                                                  Matthew R. Cleverley, OSB #93235

12

13

14

15

16

17

18

19

20

21

22

23

CERTIFICATE OF STATE COURT FILINGS – 3

FIDELITY NATIONAL LAW GROUP
A Division of Fidelity National Title Group, Inc.
1200 – 6TH AVENUE, SUITE 1900
SEATTLE, WA  98101
(206) 223-4525



King County | Home | News | Services | Comments | Search

# ECR Online   SUPERIOR COURT CLERK'S OFFICE

Home | Logout | Help



## All Documents

### My Account Info
Pages Remaining: 136
Buy More
Pages Selected: 0

### INSTRUCTIONS
▷ 1) Select the documents you wish to purchase by checking the box to the left of the Sub #. 2) Click on the Get Document button.

**All Documents** | **Viewable**

| Case Number: | 10-2-27688-2 | Case Title: | VINLUAN VS FIDELITY NATIONAL TITLE & ESCROW CO ET AL | Filter By: | - All - |

| Select | Sub #▲ | Pages | Date | Description |
|--------|--------|-------|------|-------------|
| | 1 | 55 | 07/29/2010 | COMPLAINT FOR TEMP RESTRAINING ORDER |
| | 2 | 6 | 07/29/2010 | SET CASE SCHEDULE |
| | 3 | 1 | 07/29/2010 | CASE INFORMATION COVER SHEET |
| | 4 | 2 | 07/29/2010 | SUMMONS |
| | 5 | 3 | 07/29/2010 | NT RE: DEPENDENT OF MILITARY PERSON |

**Get Document(s)**

King County | News | Services | Comments | Search

Links to external sites do not constitute endorsements by King County.
By visiting this and other King County web pages,
you expressly agree to be bound by terms and conditions of the site.
The details.

Build: 1.0.0.40
Environment: Production

https://dja-ecreweb.kingcounty.gov/ecronline/External/CaseContents/AllDocuments.aspx[8/11/2010 9:43:54 AM]











Case 2:10-cv-01823-JLR  Document 814-1  Filed 04/13/13  Page 1 of 73

This package is reusable — find a new use! Return postage guaranteed by use of this package is prohibited.

stage online - Go to usps.com/postageonline

:ASE PRESS FIRMLY

**PRIORITY MAIL**®

ED STATES POSTAL SERVICE

U.S. POSTAGE
PAID
BELLEVUE, WA
98004
JUL 30 '10
AMOUNT
$0.00
00021028-01

UNITED STATES POSTAL SERVICE

1006    32204

Flat Rate
Mailing Envelope

**For Domestic and International Use**

**Visit us at usps.com**

From/Expéditeur:

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 · 112TH AVENUE NORTHEAST
SUITE 230
BELLEVUE, WASHINGTON 98004-2992

Fidelity National Financial
Corporate Headquarters
601 Riverside Avenue
Jacksonville, FL 32204

unt of mailable material may be enclosed, as long
nvelope is not modified, and the contents are
confined within the envelope with the adhesive
I as the means of closure.

**NATIONAL RESTRICTIONS APPLY:**

**ND WEIGHT LIMIT ON
NATIONAL APPLIES**

is forms are required. Consult the
*ional Mail Manual (IMM)* at pe.usps.gov
a retail associate for details.

USPS packaging products have been awarded Cradle
to Cradle Certification℠ for their ecologically-intelligent
design. For more information go to mbdc.com/usps
Cradle to Cradle Certified℠ is a certification mark of MBDC.

P14F

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING**

| | |
|---|---|
| REYNALDO D. VINLUAN, an individual, | NO.  10-2-27688-2 SEA |
| Plaintiff | **SUMMONS** |
| v. | |
| FIDELITY NATIONAL TITLE AND ESCROW COMPANY, a Washington Corporation; UNITED PACIFIC MORTGAGE, d/b/a AVENTUS, INC., a Washington Corporation; SAXON MORTGAGE SERVICE, INC., a Texas Corporation; OCWEN LOAN SERVICING, a Florida Corporation; DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR REGISTERED HOLDERS OF MORGAN STANLEY ABS CAPITAL I INC. TRUST 2007-NC3 MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-NC-3, a Delaware Corporation; REGIONAL TRUSTEE SERVICE CORPORATION, a Washington Corporation; and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, | |
| Defendants. | *(Clerk's Action Required)* |

**TO THE ABOVE-NAMED DEFENDANTS**

SUMMONS  - Page 1

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

1      A lawsuit has been started against you in the above-entitled court by REYNALDO D.
2  VINLUAN, Plaintiff.  Plaintiff's claim is stated in the written Complaint, a copy of which is
   served upon you with this Summons.

3      If you were served with this Summons and Complaint **within** the State of
   Washington, then in order to defend against this lawsuit, you must respond to the Complaint
4  by stating your defense in writing, and by serving a copy upon the person signing this
   Summons with 20 days after the service of this Summons, excluding the day of service, or a
5  default judgment may be entered against you without notice.  A default judgment is one
   where plaintiff is entitled to what he asks for because you have not responded.  If you serve
6  a Notice of Appearance on the undersigned person, you are entitled to Notice before a
   default judgment may be entered.

7
       If you were served with this Summons and Complaint **outside** the State of
8  Washington, then in order to defend against this lawsuit, you must respond to the Complaint
   by stating your defense in writing, and by serving a copy upon the person signing this
9  Summons with 60 days after service of this Summons and Complaint by stating your defense
   in writing, and by serving a copy upon the person signing this Summons within 60 days after
10 the service of this Summons, excluding the day of service, or a default judgment may be
   entered against you without notice.  A default judgment is one where plaintiff is entitled to
11 what he asks for because you have not responded.  If you serve a Notice of Appearance on
   the undersigned person, you are entitled to Notice before a default judgment may be entered.

12
       You may demand that the Plaintiff(s) file this lawsuit with the Court.  If you do so,
13 the demand must be in writing and must be served upon the person signing this Summons.
   Within 14 days after you serve the demand, the Plaintiff(s) must file this lawsuit wit the
14 Court, or the service on you of this Summons and Complaint will be void.

15     If you wish to seek the advise of an attorney in this matter, you should do so
   promptly so that your written response, if any, may be served on time.
16
       This Summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the
17 State of Washington.

18     **DATED** this ___27th___ day of July, 2010.

19                              RICHARD LLEWELYN JONES, P.S.

20                         By _____
                              Richard Llewelyn Jones, WSBA #12904
21                            Attorneys for Plaintiff

22

SUMMONS  - Page 2

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

**IN THE SUPERIOR COURT FOR THE COUNTY OF KING**
**STATE OF WASHINGTON**

| | |
|---|---|
| REYNALDO D. VINLUAN, an individual,<br><br>                              Plaintiff<br>v.<br><br>FIDELITY NATIONAL TITLE AND ESCROW COMPANY, a Washington Corporation; UNITED PACIFIC MORTGAGE, d/b/a AVENTUS, INC., a Washington Corporation; SAXON MORTGAGE SERVICE, INC., a Texas Corporation; OCWEN LOAN SERVICING, a Florida Corporation; DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR REGISTERED HOLDERS OF MORGAN STANLEY ABS CAPITAL I INC. TRUST 2007-NC3 MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-NC-3, a Delaware Corporation; REGIONAL TRUSTEE SERVICE CORPORATION, a Washington Corporation; and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation,<br><br>                              Defendants. | NO. 10-2-27688-2 SEA<br><br>**COMPLAINT FOR TEMPORARY RESTRAINING ORDER AND PERMANENT INJUNCTION; ACTION TO QUIET TITLE; WRONGFUL FORECLOSURE; LIBEL/DEFAMATION OF TITLE; MALICIOUS PROSECUTION; VIOLATION OF THE TRUTH IN LENDING ACT 15 U.S.C. § 1601,** *et seq.***; VIOLATION OF THE CONSUMER PROTECTION ACT, RCW 19.86, ET. SEQ.; VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. §§ 1962,** *et seq.*<br><br><br>*(Clerks Action Required)* |

COMPLAINT
Page 1

RICHARD LLEWELYN JONES, P.S.

**ATTORNEY AT LAW**
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

**COMES NOW** the Plaintiff, REYNALDO D. VINLUAN, by and through his attorneys, RICHARD LLEWELYN JONES, P.S., and files this Complaint against the Defendants hereby alleging as follows:

### I. PARTIES

1.1   *Plaintiff.*   Plaintiff REYNALDO D. VINLUAN, is now and was at all times herein mentioned a resident in Seattle, King County, Washington.  Said Plaintiff is the owner of certain real property, situated in King County, state of Washington, legally described as follows:

> Unit 606 of TWENTY-THIRD & MAIN, a condominium,
> according to the Declaration thereof recorded under King County
> Recording No. 200001101000944, and any amendments thereto,
> and in Volume 169 of Condominiums, 54 through 63, records of
> King County, Washington.
>
> Commonly known as: 303 23rd Avenue South, #606, Seattle, WA
> 98144-2380  (hereinafter "the Property").

1.2   *Defendant FIDELITY NATIONAL TITLE AND ESCROW COMPANY.*  Fidelity National Title and Escrow Company, is a Washington corporation that is trustee under the deed of trust related to the property. This defendant is hereinafter referred to as "Fidelity".

1.3   *Defendant UNITED PACIFIC MORTGAGE d/b/a AVENTUS, INC.*  United Pacific Mortgage d/b/a Aventus, Inc. is a Washington corporation and is the originating lender/beneficiary under the deed of trust.  This Defendant is hereinafter referred to as "United Pacific".

1.4   *Defendant SAXON MORTGAGE SERVICE, INC.*  Saxon Mortgage Service, Inc is a Texas corporation and the second servicer of the mortgage related to the property.  This Defendant is hereinafter referred to as "Saxon".

COMPLAINT
Page 2

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

1.5    *Defendant OCWEN LOAN SERVICING.*   Ocwen Loan Servicing is a Florida corporation and the third servicer of the mortgage related to the property. This Defendant is hereinafter referred to as "Ocwen".

1.6    *Defendant DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR REGISTERED HOLDERS OF MORGAN STANLEY ABS CAPITAL I INC. TRUST 2007-NC-3 MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007 NC-3.* Defendant is a Delaware corporation and is hereinafter referred to as "Deutsche."

1.7    *Defendant REGIONAL TRUSTEE SERVICE CORPORATION.* Regional Trustee Service Corporation is a Washington corporation and is hereinafter referred to as "Regional Trustee."

1.8    *Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.* Mortgage Electronic Registration Systems, Inc., is a Delaware corporation.  This Defendant is hereinafter referred to as "MERS".

1.9    *Doe Defendants 1-20.*   Doe Defendants 1-20 were at all times mentioned herein, the Defendants, and each of them, were the principals, successors or assigns, agents, servants, representatives and/or employees of each of the remaining Defendants and were acting within the course and scope of such agency or employment.   The exact terms and conditions of any succession, assignment, agency, representation or employment relationships are presently unknown to Plaintiff, but when the information is ascertained, leave of court will be sought to insert the appropriate allegations.

COMPLAINT
Page 3

**RICHARD LLEWELYN JONES, P.S.**
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

1.10   No party named herein is a minor, in the military service of the United States, as defined by the Soldier's and Sailor's Relief Act of 1942, as subsequently amended and re-codified under the Service members Civil Relief Act, or otherwise incompetent.

1.11   At all time relevant to this cause of action, the above-named Defendants acted for and on behalf of themselves, each other and, where appropriate, their respective martial communities.

## II. JURISDICTION AND VENUE

2.1   This court has jurisdiction and venue is properly laid with this court because this action involves title to certain real property located in King County, Washington.

## III. FACTS

3.1   Plaintiff executed a Deed of Trust recorded on December 14, 2006, with Defendant Fidelity as trustee, naming MERS as purported beneficiary; the lender was identified as United Pacific.   This instrument was recorded in King County under Recordation No. 20061214002367, encumbering the Property.   A true and correct copy of said deed of trust is attached here and incorporated herein by this reference as *Exhibit "A"*.

3.2   As of December 14, 2006, and subsequently at all times thereafter, the Plaintiff owed to MERS no monetary or other obligation under the terms of any promissory note or other evidence of debt executed contemporaneously with the deed of trust referenced in paragraph 3.1.

3.3   On May 13, 2009, a Plaintiff sent to Saxon a Request for Modification of Loan by U.S. certified mail. A true and correct copy of said letter is attached herein and incorporated by reference as *Exhibit "B."*

COMPLAINT
Page 4

RICHARD LLEWELYN JONES, P.S.

ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

3.4     On June 24, 2009, Saxon sent to Plaintiff a letter regarding recalculation of Plaintiff's Note. A true and correct copy of said letter is attached herein and incorporated by reference as *Exhibit "C."*

3.5     On July 2, 2009, Saxon sent to Plaintiff a letter informing him that foreclosure process has been initiated. A true and correct copy of said letter is attached herein and incorporated by reference as *Exhibit "D."*

3.6     On July 7, 2009, Defendant Regional Trustee Services Corporation, as "trustee and/or agent for the beneficiary," executed a Notice of Default. A true and correct copy of said Notice of Default is attached herein and incorporated by reference as *Exhibit "E."*

3.7     On July 7, 2009, Defendant MERS executed, as beneficiary of the security instrument referenced in paragraph 3.1, an Appointment of Successor Trustee nominating Defendant Regional Trustee as trustee.  This instrument was recorded in King County under Recordation No. 20090821002454 on August 21, 2009.   A true and correct copy of said Appointment of Successor Trustee is attached here and incorporated herein by this reference as *Exhibit "F".*

3.8     On August 20, 2009, Defendant Regional Trustee executed a Notice of Trustee's Sale in connection with the Property.  This instrument was recorded in King County under Recording Number 20090821002455 on June 1, 2010.  A true and correct copy of said notice is attached here and incorporated herein by this reference as *Exhibit "G".*

3.9     On November 24, 2009, Defendant Regional Trustee executed a Discontinuance of Trustee's Sale in connection with the Property.  This instrument was recorded in King County

COMPLAINT
Page 5

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

under Recording Number 20091201000902.  A true and correct copy of said notice is attached

here and incorporated herein by this reference as *Exhibit "H"*.

3.10    Defendant MERS executed an Assignment of Deed of Trust, under which

Defendant Deutsche is the deed of trust assignee. Under this instrument, the purported date of

the assignment of deed of trust is November 16, 2009, however, the instrument is notarized on

April 5, 2010. This instrument was recorded in King County under Recording Number

20100421000723 and recorded on April 21, 2010. A true and correct copy of said notice is

attached here and incorporated herein by this reference as *Exhibit "I"*.

### IV. CAUSE OF ACTION VIOLATION OF CONSUMER PROTECTION ACT

4.1     Plaintiff repeats and realleges each and every item and allegation above as if

fully and completely set forth herein.

4.2     Defendants have violated the Consumer Protection Act, *RCW 19.86, et seq.,*

through a course of conduct in executing, recording and relying upon documents that it knew or

should have known to be false and that have the capacity to deceive a substantial portion of the

public.

4.3     In promulgating false and improperly executed documents Defendants are

engaged in deceptive acts.

4.4     Defendant Regional Trustee violated provisions of *RCW 61.24* and *15 U.S.C.*

*§1692*, per se violations of *RCW 19.86*.

4.5     Defendants have engaged in these activities as part of a normal course of business

and commerce. Such activities are likely to be repeated affecting the people of the State of

Washington.

COMPLAINT
Page 6

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

4.6     The public interest is negatively impacted by the pattern of conduct engaged in by Defendants as evidenced by the repeated acts and obvious potential for repetition.

4.7     The Plaintiff has suffered injury as outlined above and below, in addition the distraction and loss of time to pursue business and personal activities due to the necessity of addressing the wrongful conduct through this and other actions.  These injuries are solely the result of the conduct of the Defendants in this action.

4.8     Several named Defendants are jointly and severally liable as said Defendants knowingly executed and directed documents to Plaintiff or Defendant Regional Trustee at such time they knew or should have known contained false statements.

## V. CAUSE OF ACTION VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT

5.1     Plaintiff repeats and realleges each and every item and allegation above as if fully and completely set forth herein.

5.2     Defendant Regional Trustee and Saxon have violated the Act through their use of false and misleading representations as outlined above, in violation of § 807 of the Fair Debt Collection Practices Act.

5.3     A threat to take nonjudicial action to dispossess the Plaintiff of his residence without a present right to possession by Defendant Regional Trustee, or any other named Defendant, is a violation of § 808 (6) of the Fair Debt Collection Practices Act.

5.4     Several named Defendants are jointly and severally liable as said Defendants knowingly executed documents they knew or should have known contained false statements or seeking to take nonjudicial action to which they were not legally entitled.

COMPLAINT
Page 7

RICHARD LLEWELYN JONES, P.S.

ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

## VI. CAUSE OF ACTION FOR LIBEL/DEFAMATION OF TITLE

6.1    Plaintiff repeats and realleges each and every item and allegation above as if fully and completely set forth herein.

6.2    Defendant Regional Trustee made a false and defamatory statement against Plaintiff and the title to Plaintiff's property by recording and publishing a Notice of Trustee's Sale when it had no legal right to do so. Such action was not protected by any privilege, was the result of said Defendant's malicious, reckless or negligent conduct, had the potential effect of defeating Plaintiff's title, and had a prejudicial effect upon Plaintiff's reputation and damaged his ability to negotiate with third parties in addition to other damages.

6.3    Several named Defendants are jointly and severally liable as said Defendants knowingly executed and directed documents to Plaintiff, third parties or Defendant Regional Trustee at such time as they knew or should have known said documents contained false statements.

## VII.    CAUSE OF ACTION FOR MALICIOUS PROSECUTION

7.1    Plaintiff repeats and realleges each and every item and allegation above as if fully and completely set forth herein.

7.2    Defendant Regional Trustee embarked upon the above described course of conduct to dispossess the Plaintiff of his residence with actual or imputed knowledge of the impropriety of such action.  The Defendant had no basis for a reasonable belief that the actions taken were proper.

COMPLAINT
Page 8

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

7.3    These actions described above were taken in reckless disregard of the rights of the Plaintiff and sought to seize and put up for sale the Plaintiff's property giving rise to the damages and injuries herein described.

7.4    Several named Defendants are jointly and severally liable as said Defendants knowingly executed and directed documents to Defendant Regional Trustee at such time they knew or should have known said documents contained false statements.

## VIII.   CAUSE OF ACTION FOR WRONGFUL FORECLOSURE

8.1    Plaintiff repeats and realleges each and very item and allegation above as fully and completely set forth herein.

8.2    Defendant MERS did not at the time of the deed of trust was executed, nor at any subsequent time thereafter, meet the definition of "Beneficiary" under *RCW 61.24.005*. Therefore MERS cannot ever have the right to foreclose under the Deed of Trust nor legally assign such right, since that right is reserved to the owner and holder of the subject Promissory Note.   It is Plaintiff's contention, based upon the foregoing, that the subject transaction is nothing more than a sham and therefore the appointment of Regional Trustee as successor trustee by MERS was invalid.

8.3    *RCW 61.24.020* requires that only those deeds of trust that "secure the performance of an obligation of the grantor or another **to the beneficiary** may be foreclosed by trustee's sale." Plaintiff at no time was obligated to perform any obligation to MERS.

8.4    Defendants have violated the provisions of *RCW 61.24*.

COMPLAINT
Page 9

RICHARD LLEWELYN JONES, P.S.

ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

8.5     Based upon the facts alleged herein the Defendants have engaged in a wrongful foreclosure against the Plaintiff for which the sale should be permanently enjoined.

## IX.     ACTION TO QUIET TITLE

9.1     The Plaintiff is the owner in fee, and is in possession of, the subject Property.

9.2     Plaintiff acquired his interest in the property by virtue of the events herein described in that MERS was not a legitimate beneficiary under *RCW 61.24.005* and further that several Defendants have engaged in transactions that have irreparably severed the promissory note from the deed of trust.

9.3     Plaintiff has been in the actual and uninterrupted possession of the Property since the dates previously set forth.

## X.     PRAYER FOR RELIEF

10.1    That judgment be entered against all of the Defendants, jointly and severally, for all damages in an amount to be proven at the time of trial;

10.2    That the actions of some or all of the Defendants be determined to be unfair and deceptive business practices in violation of *RCW 19.86, et seq.* and that this Court award all such relief to Plaintiff as they may be entitled, including treble damages and an award for costs and attorneys fees;

10.3    That the Plaintiff be awarded consequential damages, including attorney's fees incurred to bring this action and all other attorney's fees incurred in defending against the actions of the Defendants described more particularly above, in an amount to be proved at trial;

COMPLAINT
Page 10

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2059 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

1    10.4    That the Plaintiff be awarded statutory damages available under any applicable

2    statutes; including without limitation *15 U.S.C. §1692* or any other statutory basis that may

3    emerge at trial.

4    10.5    That Plaintiff's title to the Property be established and quieted in him in fee

5    simple, against any and all claims of the Defendants, or any of them;

6    10.6    That the Defendants, and each of them, be forever barred from having or

7    asserting any right, title, estate, lien, or interest in or to the property herein described adverse to

8    Plaintiff; and

9    10.7    That the Plaintiff have such other and further relief as may be just and equitable.

     DATED this 27th day of July, 2010.

10

11                                         RICHARD LLEWELYN JONES, P.S.

12

13                                         Richard Llewelyn Jones, WSBA # 12904
                                           Attorney for Plaintiff

14

15

16

17

18

19

20

21

22

COMPLAINT
Page 11

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

**EXHIBIT A**

Return To:
UNITED PACIFIC MORTGAGE
2901 SOUTH 128TH STREET, SUITE 1500
SEATTLE, WASHINGTON 98168
Attn.: SHIPPING DEPT./DOC. CONTROL
Assessor's Parcel or Account Number: 872663-0560-02
Abbreviated Legal Description: Unit 604, Twenty-Third & Main

[Include lot, block and plat or section, township and range]
Trustee: Fidelity National Title Title and Escrow Company

Full legal description located on page 17.
Additional Grantees located on page 1.

[Space Above This Line For Recording Data]

# DEED OF TRUST

MIN 1003176-1011311350-Z
MERS TELEPHONE:   (888) 679-6377

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated December 12, 2006, together with all Riders to this document.

(B) "Borrower" is Reynaldo D Vishun an unmarried person. Borrower is the trustor under this Security Instrument.

(C) "Lender" is UNITED PACIFIC MORTGAGE, a dba of Aventus, Inc., a Nevada Corporation. Lender is a corporation organized and existing under the laws of the State of WASHINGTON. Lender's address is 2901 SOUTH 128TH STREET, SUITE 1500, SEATTLE, WASHINGTON 98168.

(D) "Trustee" is Fidelity National Title Title and Escrow Company.

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated December 12, 2006. The Note states that Borrower owes Lender Two Hundred Sixteen Thousand And 00/100 Dollars (U.S.

Washington – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3048 1/01
6A(WA) (0012).04                                         Page 1 of 17
wacmerld                                                                              Initials: _____

$216,000.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than January 1, 2037.

(G) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(H) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [X] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] Prepayment Rider Addendum to ARM Rider |

(J) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) **"Escrow Items"** means those items that are described in Section 3.

(N) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

Washington -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS     Form 3048 1/01
6A(WA) (0012).04       Page 2 of 17       Initials: _____

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

County [Type of Recording Jurisdiction] of KING [Name of Recording Jurisdiction]:

Full legal description is located on page 17 of this document.
Parcel ID Number: 872663-0560-02

which currently has the address of
[Street]

303 23rd Ave S #606
SEATTLE [City] , Washington 98144 [Zip Code] ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment

Washington – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3048 1/01
6A(WA) (0012).04                                        Page 3 of 17                     Initials: _____

insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the

Washington – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3048 1/01
6A(WA) (0012).04                                            Page 4 of 17                                      Initials: _____

amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   Charges; Liens.   Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Washington – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3048 1/01
6A(WA) (0012).04                                          Page 5 of 17                                     Initials: _____

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.  **Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not

economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender

Washington – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3048  1/01
6A(WA) (0012).04                                             Page 7 of 17                           Initials:_____

may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses.

Washington – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3048 1/01
6A(WA) (0012).04                                   Page 8 of 17                          Initials:_____

These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the

Washington – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS                Form 3048 1/01
6A(WA) (0012).04                                                Page 9 of 17

Initials: _____

Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees

Washington – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    **Form 3048 1/01**
6A(WA) (0012).04                        Page 10 of 17                         Initials:

to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

Washington – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          **Form 3048  1/01**
6A(WA) (0012).04                                    Page 11 of 17                                         Initials:_____

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the

Washington – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS   Form 3048 1/01
6A(WA) (0012).04                    Page 12 of 17                    Initials:_____

mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice

Washington – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS     Form 3048 1/01
6A(WA) (0012).04            Page 13 of 17

Initials:_____

shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property at public auction at a date not less than 120 days in the future. The notice shall further inform Borrower of the right to reinstate after acceleration, the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale, and any other matters required to be included in the notice by Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property for a period or periods permitted by Applicable Law by public announcement at the time and place fixed in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs and the Trustee's fee for preparing the reconveyance.

24. **Substitute Trustee.** In accordance with Applicable Law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. **Use of Property.** The Property is not used principally for agricultural purposes.

26. **Attorneys' Fees.** Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument. The term "attorneys' fees," whenever used in this Security Instrument, shall include without limitation attorneys' fees incurred by Lender in any bankruptcy proceeding or on appeal.

Washington – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3048  1/01
6A(WA) (0812).04                                    Page 14 of 17                                    Initials:_____

ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____              (Seal)
Reynaldo D Vinluan         -Borrower

_____              (Seal)
                    -Borrower

_____              (Seal)
                    -Borrower

_____              (Seal)
                    -Borrower

**STATE OF WASHINGTON**
**County of**                                                    } ss:

On this day personally appeared before me

**Reynaldo D Vinluan,**

to me known to be the individual(s) described in and who executed the within and foregoing
instrument, and acknowledged that he/she/they signed the same as his/her/their free and voluntary act
and deed, for the uses and purposes therein mentioned.

GIVEN under my hand and official seal this _____ day of _____.

_____
Notary Public in and for the State of Washington, residing at

My Appointment Expires on

Washington – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3048  1/01
6A(WA) (0012).04                                            Page 16 of 17                                    Initials: _____

SEE EXHIBIT "A" ATTACHED HERETO AND BY THIS REFERENCE MADE A PART
HEREOF.

**EXHIBIT B**

303 23rd Ave S #606
Seattle, WA 98144

May 5, 2009

Saxon Mortgage
4708 Mercantile Dr N
Ft Worth, TX 76137

## REQUEST FOR MODIFICATION OF LOAN NO. 2000276249

This is a request for a loan modification, I am experiencing a financial hardship and I am unable to sell or refinance.

I am requesting a modification to my rate and term as outlined in the "Modification Proposal" section of this submission which seeks a reduction in rate to 4.0% and a modification in term to 40 years. I feel this will give me the best chance at making my payments on time and save you, the lender, the most money over time.

Please find enclosed:

1. Financial Worksheet
2. Modification Proposal
3. Income & Expense Calculation worksheet
4. Hardship Letter
5. Credit Reports
6. Property Profile and Estimate of Valuation
7. Paystubs
8. Tax Returns
9. Mortgage Statements
10. Expense and Income Documentation to Support Proposal
11. Bank Statements – payments identified
12. Asset & Liability Supporting Documentation

Please also find enclosed a request under federal code, for copies of our loan documents to be used for a forensic analysis of our original loan.

Please give serious consideration to our request as this is our only hope of saving our home.

Thank you in anticipation,


*Reynaldo Vinluan*
Reynaldo Vinluan

# EXHIBIT C



Saxon Mortgage Services , Inc.
PO BOX 161489
FT WORTH, TX 76161-1489

June 24, 2009

00967  0006433  002
REYNALDO D VINLUAN
303 23RD AVE S APT 606
SEATTLE WA 98144-2380

Re: Loan Number:  2000276249

Dear Valued Customer(s):

This letter is to inform you that Saxon Mortgage Services, Inc. has recalculated your interest rate and payment, as provided in your note. The recalculated interest rate will be effective 07/01/09 and your new monthly payment of principal and interest or interest only, depending on your note, will be effective 08/01/09.

Your previously disclosed interest rate was 8.64000% and your previously disclosed monthly payment of principal and interest or interest only was $1554.87. Your previously disclosed interest rate was based upon the previous index value of 2.59125% plus the margin of 6.05000% rounded as required in your note, and subject to any caps or limitations established in your note.

Your new interest rate is 7.47500% and your new payment of prinicipal and interest or interest only is $1345.22. Your new interest rate is based upon the current index value of 1.24000% plus the margin of 6.05000% rounded as required in your note, and subject to any caps or limitations established in your note.  Your new payment is determined according to your note by using the new interest rate, your projected unpaid principal balance of $215954.75, and the term of your loan.  Your new monthly payment does not include any escrow amounts.

If you are a borrower on this loan and have filed for bankruptcy protection, this letter is for informational purposes only and is NOT attempting to collect, recover, or offset any discharged debt as your personal responsibility.

Thank you for the opportunity to be of service.  If you need additional information, please contact our Customer Service Center at 800-594-8422.

*For purposes of this letter, this amount includes only principal and interest or interest only and does not include any escrow amounts. The actual amount of your payment may include escrow amounts.

Sincerely,

Saxon Mortgage Services, Inc.

1211-Seasoned - 051308

# EXHIBIT D

 

# SAXON

4708 Mercantile Drive North
P.O. Box 161489
Fort Worth, TX 76161-1489
(817) 665-7200 • (817) 663-7400 Fax

07/02/09


REYNALDO D   VINLUAN

303 23RD AVE S 606

SEATTLE WA 98144-2380

RE:   Loan Number:   2000276249      Due Date:   03/01/09

Dear Valued Customer:

Due to  your  failure to honor  your  commitment  in  making your
monthly  mortgage  payments,    we  have  initiated  foreclosure
proceedings  on your mortgage loan.  Saxon  has given this action
careful consideration.

Our goal  is to help  you keep your home;  however,  we must have
your cooperation.  You must  contact  our office  immediately  to
discuss your options.  You may reach  one of  our Specialists at
888-325-3502.


Sincerely,


Home Preservation Specialist
Saxon Mortgage Services, Inc.

Saxon Mortgage Services, Inc. is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.
If your loan is currently in bankruptcy, this notice is being sent for informational purposes only. This notice is not intended as an attempt to collect,
assess, or claim against or demand payment from any person who is protected by the U.S. Bankruptcy Code. If you have recently been discharged
of your personal liability on this debt due to your Chapter 7 bankruptcy, Saxon is not seeking to collect, recover or offset the debt as a personal
liability. We intend only to enforce and collect the debt against the collateral as permitted by applicable state law. This communication is only
for the purpose of protecting our right to enforcement of the lien on the collateral.

Visit us on the web at www.saxononline.com.

**EXHIBIT E**

**NOTICE OF DEFAULT**

*Pursuant to R.C.W. Chapter 61.24, et seq. and 62A.9A-604(a)(2) et seq.*

Trustee Sale No.: 01-FMG-79015

| | | | | | | | | | | | | | | |
|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|

1.    DEFAULT

YOU ARE HEREBY NOTIFIED that the Beneficiary has declared you, the borrower or grantor, in default on the obligations secured by a Deed of Trust recorded under Auditor's/Recorder's No. 20061214002367, records of KING County, Washington; originally granted for the benefit of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR ITS SUCCESSORS AND ASSIGNS, as beneficiary. The beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by or will be assigned to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR ITS SUCCESSORS AND ASSIGNS. Said Deed of Trust encumbers the following described real property in KING County:

UNIT 606, TWENTY-THIRD & MAIN AS MORE FULLY DESCRIBED IN EXHIBIT "A" ATTACHED HERETO

The postal address of the Property is purported to be: 303 23RD AVENUE SOUTH # 606, SEATTLE, WA 98144.

2.    STATEMENT OF DEFAULT AND ITEMIZED ACCOUNT OF AMOUNTS IN ARREARS:

The beneficiary alleges that you are in default for failure to pay the following past due amounts, which are in arrears:

| | Amount due as of July 7, 2009 |
|---|---|
| Delinquent Payments from March 01, 2009 | |
| 4 payments at $ 1,704.64 each | $    6,818.56 |
| 1 payments at $ 1,726.55 each | $    1,726.55 |
| (03-01-09 through 07-07-09) | |
| Late Charges: | $      725.00 |
| Beneficiary Advances: | $       42.27 |
| Suspense Credit: | $        0.00 |
| TOTAL: | $    9,312.38 |

If you have failed to pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust, the beneficiary may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums. These requirements for reinstatement should be confirmed by contacting the undersigned Trustee.

3.    OTHER CHARGES, COSTS AND FEES:

WA NOD

In addition to the amounts in arrears specified above, you, the borrower, grantor, or any guarantor, are or may be obligated to pay the following charges, costs and fees to reinstate the Deed of Trust if reinstatement is made before recording of the Notice of Trustee's Sale.

```
        Trustee Fee                        $      405.00
        Certified Mailing Cost             $       25.00
        Posting Cost                       $       55.00
        TSG Cancellation Cost              $      962.00
                                                  ========
        TOTAL CHARGES, COSTS AND FEES:     $    1,447.00
```

4.    REINSTATEMENT:    **IMPORTANT! PLEASE READ!**

THE ESTIMATED AMOUNT NECESSARY TO REINSTATE YOUR NOTE AND DEED OF TRUST BEFORE THE RECORDING OF THE NOTICE OF TRUSTEE'S SALE IS THE SUM OF PARAGRAPHS 2 AND 3 ABOVE IN THE AMOUNT OF $10,759.38, PLUS the amount of any monthly payments and late charges which may fall due after the date of this Notice of Default.  However, because some of the items can only be estimated at this time and because the amount needed to reinstate your loan may include presently unknown expenditures required to preserve the property or to comply with state or local laws, it will be necessary for you to contact the undersigned prior to the time you tender funds so that you may be advised of the exact amount you will be required to pay.

Reinstatement monies may be tendered to  (CERTIFIED OR CASHIER'S CHECK REQUIRED)

REGIONAL TRUSTEE SERVICES CORPORATION
616 1st Avenue, Suite 500
Seattle, WA 98104

If your default includes a default other than failure to pay monthly payments and/or late charges when due, then in order to reinstate the Note and Deed of Trust before the Notice of Trustee's Sale is recorded, you must cure such other default(s).

5.    CONSEQUENCES OF DEFAULT:

a.    Failure to cure the alleged default within thirty days of the mailing of this notice, or if personally served, within thirty days of the date of personal service thereof, may lead to recordation, transmittal and publication of a Notice of Trustee's Sale, and the Property described in paragraph 1 above may be sold at public auction at a date no less than 120 days in the future.

b.    The effect of the recordation, transmittal and publication of a Notice of Trustee's Sale will be to (i) increase the costs and fees and (ii) publicize the default and advertise the Property described herein for sale.

c.    If the default(s) described above is (are) not cured within thirty days of the mailing of this notice, the lender hereby gives notice that the entire principal balance owing on the note secured by the Deed of Trust described in paragraph 1 above, and all accrued and unpaid interest, as well as costs of foreclosure, shall immediately become due and payable.  Notwithstanding acceleration, the grantor or the holder of any junior lien or encumbrance shall have the right after acceleration to reinstate by curing all defaults and paying all costs, fees and advances, if any, made pursuant to the terms of the obligation and/or deed of trust on or before 11 days prior to a Trustee's sale.

d.    The effect of a Trustee's Sale of the grantor's Property by the trustee will be to deprive the grantor of all of their interest in the Property described in paragraph 1 above.

WA NOD

**EXHIBIT FOR LEGAL DESCRIPTION**
Trustee's Sale No. 01-FMG-79015

EXHIBIT 'A'

LEGAL DESCRIPTION

Unit 606 of TWENTY-THIRD & MAIN, a condominium, according to the Declaration thereof recorded under King County Recording No. 20001101000944, and any amendments thereto, and in Volume 169 of Condominiums, Pages 54 through 63, records of King County, Washington.

The condominium declaration was amended by instrument(s)
Recorded:        03/19/2002 and 08/08/2002
Recording No(s): 20020319000855 and 20020808000717

Situate in the County of King, State of Washington.

NOTE FOR INFORMATIONAL PURPOSES ONLY:
The following may be used as an abbreviated legal description on the documents to be recorded, per amended RCW 65.04.  Said abbreviated legal description is not a substitute for a complete legal description within the body of the document.

Unit 606, TWENTY-THIRD & MAIN

This property is located in King county.

Recording to be delivered to:
Fidelity National Title Co, 720 Olive Way #515, Seattle, WA 98101

6.   RECOURSE TO COURTS:

The borrower, grantor and any guarantor has recourse to the courts pursuant to RCW 61.24.130 to contest the alleged default on any proper ground.

DATED: 7/7/2009

REGIONAL TRUSTEE SERVICES CORPORATION
Trustee and/or Agent for the Beneficiary

By_____
MELISSA HJORTEN, ASSISTANT VICE PRESIDENT
616 1st Avenue, Suite 500, Seattle, WA 98104
Telephone: (206) 340-2550

- 3 -

WA NOD

# SERVICEMEMBERS CIVIL RELIEF ACT NOTIFICATION

If you are on active duty in the armed services, or the dependent of a such a person, and you believe that you are entitled to protections afforded under the Soldiers' and Sailors' Relief Act, please contact the undersigned immediately. Failure to do so may result in loss of your rights, if any, under the Act. To facilitate follow-up to any response to this notice, please make any response in writing and describe the circumstances which you believe cause you to be entitled to protection under the Act.

If you have any questions about the applicability of the Soldiers' and Sailors' Relief Act, you should contact a lawyer immediately. The undersigned is not a lawyer and cannot provide you legal advice.

REGIONAL TRUSTEE SERVICES CORPORATION
616 1st Avenue, Suite 500
Seattle, WA 98104
(206) 340-2550

#380095 / SOLDIER AND SAILOR RELIEF ACT / 60000-001

**NOTICE REQUIRED BY THE
FAIR DEBT COLLECTION PRACTICE ACT
15 U.S.C. Section 1692**

TS#    01-FMG-79015

7/7/2009

ATTENTION TRUSTORS:

1.  You are hereby notified that REGIONAL TRUSTEE SERVICES CORPORATION is attempting to collect a debt.

2.  As of the date of this letter, you owe $225,008.11. Because of interest, late charges, and other charges that may vary from day to day, or may apply only upon payoff, the amount due on the day you pay may be greater. Hence if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection.

3.  The original creditor to whom the debt is/was owed is MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR ITS SUCCESSORS AND ASSIGNS. The current creditor is MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR ITS SUCCESSORS AND ASSIGNS.

4.  The debt will be assumed to be valid by REGIONAL TRUSTEE SERVICES CORPORATION unless WITHIN THIRTY DAYS AFTER THE RECEIPT OF THIS NOTICE, you dispute the validity of the debt or some portion thereof.

5.  If you notify REGIONAL TRUSTEE SERVICES CORPORATION within thirty days after the receipt of this Notice that the debt or any portion thereof is disputed, REGIONAL TRUSTEE SERVICES CORPORATION will provide a verification of the debt, and a copy of the verification will be mailed to you by REGIONAL TRUSTEE SERVICES CORPORATION. In attempting to collect the debt, any information obtained will be used for that purpose.

6.  If the current creditor is not the original creditor, and if you make a request to REGIONAL TRUSTEE SERVICES CORPORATION within thirty days after the receipt of this Notice, the name and address of the original creditor will be mailed to you by REGIONAL TRUSTEE SERVICES CORPORATION.

7.  Written and/or verbal requests may be made to and further information can be obtained from:

REGIONAL TRUSTEE SERVICES CORPORATION
616 1st Avenue, Suite 500
Seattle, WA 98104
(206) 340-2550

FDCA Notice

**EXHIBIT F**

When recorded, mail to:

REGIONAL TRUSTEE SERVICES CORPORA
616 1st Avenue, Suite 500
Seattle, WA 98104

```
20090821002454
REGIONAL TRUST AST
PAGE-001 OF 002                15.00
08/21/2009 15:16
KING COUNTY, WA
```

Trustee's Sale No: 01-FMG-79015

\*FMG790150010000000\*

## APPOINTMENT OF SUCCESSOR TRUSTEE

**KNOW ALL MEN BY THESE PRESENTS** that, REYNALDO D VINLUAN, AN UNMARRIED PERSON is the Grantor, and FIDELITY NATIONAL TITLE AND ESCROW COMPANY is the Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR ITS SUCCESSORS AND ASSIGNS is the Beneficiary under that certain trust deed dated 12/12/2006, under Auditor s/Recorder s No. 20061214002367, records of KING County, WASHINGTON.

**NOW, THEREFORE**, in view of the premises, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR ITS SUCCESSORS AND ASSIGNS, who is the present beneficiary, hereby appoints REGIONAL TRUSTEE SERVICES CORPORATION, whose address is 616 1st Avenue, Suite 500, Seattle, WA 98104, as Successor Trustee under said trust deed, to have all the powers of said original trustee, effective as of the date of execution of this document.

**IN WITNESS WHEREOF**, the undersigned beneficiary has hereunto set his hand; if the undersigned is a corporation, it has caused its corporate name to be signed and affixed hereunto by its duly authorized officers.

1

WA Sub

Trustee's Sale No.: 01-FMG-79015

DATED: 7-7-09

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. AS NOMINEE FOR ITS SUCCESSORS
AND ASSIGNS

By _____

Topako Love - VP
(Name   Title)

STATE OF _Mn____ )
                 ) ss.
COUNTY OF _Dakota_ )

On _7-7-09_ before me, _Christina Anne Sauerer_
personally appeared _Topako Love_, personally known to me (or proved
to me on the basis of satisfactory evidence) to be the person(s) whose name is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the
entity upon behalf of which the person(s) acted executed the instrument.

WITNESS my hand and official seal.

Christina Anne Sauerer
NOTARY PUBLIC - MINNESOTA
MY COMMISSION
EXPIRES JAN. 31, 2014

NOTARY PUBLIC in and for the State of
_Mn___, residing at: _Dakota_
My commission expires: _Jan._

2                                            WA Sub.

# EXHIBIT G

When recorded, mail to:

REGIONAL TRUSTEE SERVICES CORPORA
616 1st Avenue, Suite 500
Seattle, WA 98104

```
2009082100245
REGIONAL TRUST NTS
PAGE-001 OF 005          66.00
08/21/2009 15:16
KING COUNTY, WA
```

Trustee's Sale No: 01-FMG-79015

## NOTICE OF TRUSTEE'S SALE
*Pursuant to R.C.W. Chapter 61.24, et seq. and 62A.9A-604(a)(2) et seq.*

NOTICE IS HEREBY GIVEN that the undersigned Trustee, REGIONAL TRUSTEE SERVICES CORPORATION, will on November 20, 2009, at the hour of 10:00 AM, at 4TH AVE ENTRANCE OF THE KING COUNTY ADMINISTRATION BUILDING, 500 4TH AVENUE, SEATTLE, WA, sell at public auction to the highest and best bidder, payable at the time of sale, the following described real and personal property (hereafter referred to collectively as the "Property") situated in the County of KING, State of Washington:

UNIT 606, TWENTY-THIRD & MAIN AS MORE FULLY DESCRIBED IN EXHIBIT "A" ATTACHED HERETO

Tax Parcel No: 872663-0560, commonly known as 303 23RD AVENUE SOUTH  # 606 , SEATTLE, WA.

The Property is subject to that certain Deed of Trust dated 12/12/2006, recorded 12/14/2006 , under Auditor's/Recorder's No. 20061214002367, records of KING County, Washington, from REYNALDO D VINLUAN, AN UNMARRIED PERSON, as Grantor, to FIDELITY NATIONAL TITLE  AND ESCROW COMPANY, as Trustee, in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR ITS SUCCESSORS AND ASSIGNS, as Beneficiary, the beneficial interest in which is presently held by MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR ITS SUCCESSORS AND ASSIGNS.

II

No action commenced by the Beneficiary of the Deed of Trust is now pending to seek satisfaction of the obligation in any court by reason of the Borrower's or Grantor's default on the obligation secured by the Deed of Trust.

III

The default(s) for which this foreclosure is/are made are as follows:

FAILURE TO PAY THE MONTHLY PAYMENT WHICH BECAME DUE ON 3/1/2009, AND ALL SUBSEQUENT MONTHLY PAYMENTS, PLUS LATE CHARGES AND OTHER COSTS AND FEES AS SET FORTH.

1

NOTS

Failure to pay when due the following amounts which are now in arrears:

| | | Amount due as of August 21, 2009 |
|---|---|---|
| Delinquent Payments from March 01, 2009 | | |
| 4 payments at $ 1,704.64 each | $ | 6,818.56 |
| 2 payments at $ 1,726.55 each | $ | 3,453.10 |
| (03-01-09 through 08-21-09) | | |
| Late Charges: | $ | 725.00 |
| Beneficiary Advances: | $ | 42.27 |
| Suspense Credit: | $ | 0.00 |
| TOTAL: | $ | 11,038.93 |

IV

The sum owing on the obligation secured by the Deed of Trust is: Principal $215,954.75, together with interest as provided in the note or other instrument secured, and such other costs and fees as are due under the note or other instrument secured, and as are provided by statute.

V

The above described real property will be sold to satisfy the expenses of sale and the obligation secured by the Deed of Trust as provided by statute. The sale will be made without warranty, express or implied regarding title, possession, or encumbrances on November 20, 2009. The default(s) referred to in paragraph III must be cured by November 9, 2009 (11 days before the sale date) to cause a discontinuance of the sale. The sale will be discontinued and terminated if at any time on or before November 9, 2009, (11 days before the sale date) the default(s) as set forth in paragraph III is/are cured and the Trustee's fees and costs are paid. The sale may be terminated at any time after November 9, 2009, (11 days before the sale date) and before the sale, by the Borrower, Grantor, any Guarantor or the holder of any recorded junior lien or encumbrance paying the entire principal and interest secured by the Deed of Trust, plus costs, fees, and advances, if any, made pursuant to the terms of the obligation and/or Deed of Trust, and curing all other defaults.

VI

A written Notice of Default was transmitted by the Beneficiary or Trustee to the Borrower and Grantor at the following addresses:

REYNALDO D VINLUAN, 301 23RD AVENUE SOUTH #606, SEATTLE, WA, 98144
REYNALDO D VINLUAN, 303 23RD AVENUE SOUTH # 606, SEATTLE, WA, 98144
SPOUSE OF REYNALDO D VINLUAN, 303 23RD AVENUE SOUTH # 606, SEATTLE, WA, 98144
SPOUSE OF REYNALDO D VINLUAN, 301 23RD AVENUE SOUTH #606, SEATTLE, WA, 98144

by both first class and certified mail on 7/7/2009, proof of which is in the possession of the Trustee; and on 7/7/2009, the Borrower and Grantor were personally served with said written notice of default or the written Notice of Default was posted in a conspicuous place on the real property described in paragraph I above, and the Trustee has possession of proof of such service or posting.

VII

The Trustee's Sale will be held in accordance with Ch. 61.24 RCW and anyone wishing to bid at the sale will be required to have in his/her possession at the time the bidding commences, cash, cashier's check, or certified check in the amount of at least one dollar over the Beneficiary's opening bid. In addition, the successful bidder will be required to pay the full amount of his/her bid in cash, cashier's check, or certified check within one hour of the making of the bid. The Trustee whose name and address are set forth below will provide in writing to anyone requesting it, a statement of all costs and fees due at any time prior to the sale.

VIII

The effect of the sale will be to deprive the Grantor and all those who hold by, through or under the Grantor of all of their interest in the above described property.

IX

Anyone having any objection to the sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the same pursuant to RCW 61.24.130. Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's Sale.

X

NOTICE TO OCCUPANTS OR TENANTS

The purchaser at the Trustee's Sale is entitled to possession of the property on the 20th day following the sale, as against the Grantor under the Deed of Trust (the owner) and anyone having an interest junior to the Deed of Trust, including occupants who are not tenants. After the 20th day following the sale the purchaser has the right to evict occupants who are not tenants by summary proceeding under Chapter 59.12 RCW. For tenant-occupied property, the purchaser shall provide a tenant with written notice in accordance with section 2 of this act.

DATED:           August 20, 2009.
EffectiveDate:   August 7, 2009

REGIONAL TRUSTEE SERVICES CORPORATION
Trustee

By
ANNA EGDORF, AUTHORIZED AGENT
    Address:        616 1st Avenue, Suite 500
                    Seattle, WA 98104
    Phone:          (206) 340-2550
    Sale Information: www.rtrustee.com

3                                                                NOTS

STATE OF WASHINGTON    )
                               ) ss.
COUNTY OF KING           )

On August 20, 2009, before me, the undersigned, a Notary Public in and for the State of Washington, duly commissioned and sworn, personally ANNA EGDORF, to me known to be the AUTHORIZED AGENT of REGIONAL TRUSTEE SERVICES CORPORATION, the corporation that executed the foregoing instrument, and acknowledged the said instrument to be the free and voluntary act and deed of said corporation, for the uses and purposes therein mentioned, and on oath stated that he/she is authorized to execute the said instrument and that the seal affixed is the corporate seal of said corporation.

WITNESS my hand and official seal hereto affixed the day and year first above written.

_Tracey Barksdale_

NOTARY PUBLIC in and for the State of
Washington residing at: _Seattle_
My commission expires: _9-26-11_

TRACEY M. BARKSDALE
STATE OF WASHINGTON
NOTARY PUBLIC
MY COMMISSION EXPIRES
09-26-11

4

NOTS

# EXHIBIT H



200912010000902
TITLE COURT SE DTS      53.00
PAGE-001 OF 002
12/01/2009 11:59
KING COUNTY, WA

When recorded, mail to:

**REGIONAL TRUSTEE SERVICES CORPORATION**
616 1st Avenue, Suite 500
Seattle, WA 98104

Trustee's Sale No.: Q1-FMG-79015

## NOTICE OF DISCONTINUANCE OF TRUSTEE'S SALE

Reference is made to that certain Deed of Trust in which REYNALDO D VINLUAN, AN UNMARRIED PERSON, is Grantor, FIDELITY NATIONAL TITLE AND ESCROW COMPANY, is Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR ITS SUCCESSORS AND ASSIGNS is Beneficiary, dated 12/12/2006, recorded 12/14/2006, under Auditor's/Recorder's No. 20061214002367, records of KING County, WASHINGTON. Said Deed of Trust covers real property described as follows:

        Tax Parcel No. :        872663-0560

The undersigned Trustee hereby discontinues that certain Trustee's Sale set by Notice of Trustee's Sale recorded under Auditor's/Recorder's File No. 20090821002455, of KING County, WASHINGTON.

This discontinuance shall not be construed as waiving any breach or default under the aforementioned Deed of Trust or as impairing any right or remedy thereunder, or as modifying or altering in any respect any of the terms, covenants, conditions or obligations thereof, but is and shall be deemed to be only an election, without prejudice, not to cause the sale to be made pursuant to the aforementioned Notice of Trustee's Sale.

DATED: 11/24/2009

                        REGIONAL TRUSTEE SERVICES CORPORATION
                        Trustee

                        By_____
                        ANNA EGDORF, AUTHORIZED AGENT
                        Address:        616 1st Avenue, Suite 500
                                        Seattle, WA 98104

                        1                       Discontinuance

STATE OF WASHINGTON )
                     ) ss.
COUNTY OF KING       )

On 11/24/2009, before me, the undersigned, a Notary Public in and for the State of Washington, duly commissioned and sworn, personally appeared ANNA EGDORF, to me known to be the AUTHORIZED AGENT of REGIONAL TRUSTEE SERVICES CORPORATION, the corporation that executed the foregoing instrument, and acknowledged the said instrument to be the free and voluntary act and deed of said corporation, for the uses and purposes therein mentioned, and on oath stated that he/she is authorized to execute the said instrument and that the seal affixed is the corporate seal of said corporation.

WITNESS my hand and official seal hereto affixed the day and year first above written.

NOTARY PUBLIC in and for the State of
Washington, residing at:
My   commission   expires: _____

ROBERT L. MOTTER
STATE OF WASHINGTON
NOTARY PUBLIC
MY COMMISSION EXPIRES
10-09-12

2                                    Discontinuance

# EXHIBIT I

Electronically Recorded
20100421000723
SIMPLIFILE                                    A      62.00
Page 001 of 001
04/21/2010 02:03
King County, WA

Prepared by:  Jaxel Valverde
Ocwen Loan Servicing, LLC
1661 Worthington Road, Suite 100
West Palm Beach, Florida, 33409
Phone Number: 561-682-8835

**WASHINGTON**
**ASSIGNMENT OF DEED OF TRUST**

177091696000
Attorney Code: 11789

This ASSIGNMENT OF DEED OF TRUST is made and entered into as of the 16TH day of NOVEMBER 2009, from **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**, as nominee for **UNITED PACIFIC MORTGAGE, A DBA OF AVENTUS, INC.**, whose address is 3300 SW 34 Avenue, Suite 101, Ocala, FL 34474, its successors and assigns, ("Assignor) to **DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR THE REGISTERED HOLDERS OF MORGAN STANLEY ABS CAPITAL I INC. TRUST 2007-NC3 MORTGAGE PASS-THROUGH CERTIFICATES,SERIES 2007-NC3**, whose address is c/o Ocwen Loan Servicing, LLC, 1661 Worthington Road, Suite 100, West Palm Beach, Florida, 33409, all its rights, title and interest in and to a certain mortgage duly recorded in the Office of the County Recorder of KING County, State of WASHINGTON, as follows;

Dated DECEMBER 12, 2006, in the principal amount of $ 216,000.00, executed by REYNALDO D. VINLUAN to **FIDELITY NATIONAL TITLE AND ESCROW COMPANY** as Trustee(s) and **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ACTING SOLELY AS NOMINEE FOR UNITED PACIFIC MORTGAGE, A DBA OF AVENTUS, INC.** as Beneficiary, and filed of record on 12/14/10 at Book: ___AX+___, Page: ___XXX___, Instrument/Entry/Document Number: 2006121000367

PREMISES DESCRIBED AS:  [APN: 872663-0560-02] in KING County, WA.

**LEGAL DESCRIPTION:**
Unit 606 of TWENTY-THIRD & MAIN, a condominium, according to the Declaration thereof recorded under King County Recording No. 20001101000944, and any amendments thereto, and in Volume 169 of Condominiums, Pages 54 through 63, records of King County, Washington.

The condominium declaration was amended by instrument(s)
Recorded:      03/19/2002 and 05/08/2002
Recording No(s): 20020319000856 and 20020508000717

Situate in the County of King, State of Washington.

This Assignment is made without recourse, representation or warranty.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
ACTING SOLELY AS NOMINEE FOR UNITED PACIFIC
MORTGAGE, A DBA OF AVENTUS, INC.

By: _____
Name:   Scott W. Anderson
Title:     Vice President

State of Florida, County of Palm Beach)

On APRIL 05, 2010, before me Scott W. Anderson, the Vice President of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ACTING SOLELY AS NOMINEE FOR UNITED PACIFIC MORTGAGE, A DBA OF AVENTUS, INC., personally appeared, and being personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his respective authorized capacities as Vice President, and that by his signature on the instrument, the entity upon behalf of which the person acted, executed the instrument.

Notary _____

MIN: 1003176-1011311360-2
        MERS Ph.#:  (888) 679 – 6377

NOTARY STAMP

NOTARY PUBLIC-STATE OF FLORIDA
Elsie Ramirez
Commission # DD914835
Expires:    AUG. 09, 2013
BONDED THRU ATLANTIC BONDING CO., INC.

**IN THE SUPERIOR COURT FOR THE COUNTY OF KING**
**STATE OF WASHINGTON**

| | |
|---|---|
| REYNALDO D. VINLUAN, an individual, | NO.  10-2-27688-2 SEA |
| Plaintiff | |
| v. | **NOTICE TO DEFENDANTS REGARDING DEFAULT** |
| FIDELITY NATIONAL TITLE AND ESCROW COMPANY, a Washington Corporation; UNITED PACIFIC MORTGAGE, d/b/a AVENTUS, INC., a Washington Corporation; SAXON MORTGAGE SERVICE, INC., a Texas Corporation; OCWEN LOAN SERVICING, a Florida Corporation; DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR REGISTERED HOLDERS OF MORGAN STANLEY ABS CAPITAL I INC. TRUST 2007-NC3 MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-NC-3, a Delaware Corporation; REGIONAL TRUSTEE SERVICE CORPORATION, a Washington Corporation; and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, | *(Clerks Action Required)* |
| Defendants. | |

NOTICE TO DEFENDANTS REGARDING DEFAULT
Page 1

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

## NOTICE TO DEFENDANTS REGARDING DEFAULT

### (*RCW 38.42.050*)

State and Federal law provide protections to defendants who are on active duty in the military service, and to their dependents.  Dependents of a service member are the service member's spouse, the service member's minor child, or an individual for whom the service member provided more than one-half of the individual's support for 1ne hundred eighty days immediately preceding an application for relief.

One protection provided is the protection against the entry of a default judgment in certain circumstances.  This notice only pertains to a defendant who is a dependent of a member of the National Guard or military reserve component under a call to active service for a period of more than thirty consecutive days. Other defendants in military service also have protections against default judgments not covered by this notice.  If you are the dependent of a member of the National Guard or a military reserve component under a call to active service for a period of more than thirty consecutive days, you should notify the plaintiff or the plaintiff's attorneys in writing of your status as such within twenty days of the receipt of this notice.  If you fail to do so, then a court or an administrative tribunal may presume that you are not a dependent of an active duty member of the National Guard or reserves, and proceed with the entry of an order of default and/or a default judgment without further proof of your status.  Your response to the plaintiff or plaintiff's attorney about your status does not constitute an appearance for jurisdictional purposes in any pending litigation nor a waiver of your rights.

NOTICE TO DEFENDANTS REGARDING DEFAULT
Page 2

RICHARD LLEWELYN JONES, P.S.
ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

1

2    This notice is issued pursuant to *RCW 38.42.050(3)(a)*, effective June 7, 2006.

3    DATED this 27th day of July 2010.

4                                     RICHARD LLEWELYN JONES, P.S.

5

6                                     Richard Llewelyn Jones, WSBA# 12904
                                      Attorney for Plaintiff
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

NOTICE TO DEFENDANTS REGARDING DEFAULT
Page 3

RICHARD LLEWELYN JONES, P.S.

ATTORNEY AT LAW
2050 – 112th Avenue N.E.
Suite 230
Bellevue, Washington 98004
(425) 462-7322

## IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| Reynaldo D. Viniuan | NO.  10-2-27688-2    SEA |
| | Order Setting Civil Case Schedule (*ORSCS) |
| Plaintiff(s) | |
| vs | |
| Fidelity National Title and Escrow Co. et al. | ASSIGNED JUDGE  Rogers_____ 45 |
| | FILE DATE:                        07/29/2010 |
| Defendant(s) | **TRIAL DATE:               01/23/2012** |

A civil case has been filed in the King County Superior Court and will be managed by the Case Schedule on Page 3 as ordered by the King County Superior Court Presiding Judge.

### I. NOTICES

**NOTICE TO PLAINTIFF:** The Plaintiff may serve a copy of this **Order Setting Case Schedule** (*Schedule*) on the Defendant(s) along with the *Summons and Complaint/Petition*. Otherwise, the Plaintiff shall serve the *Schedule* on the Defendant(s) within 10 days after the later of: (1) the filing of the *Summons and Complaint/Petition* or (2) service of the Defendant's first response to the *Complaint/Petition*, whether that response is a *Notice of Appearance*, a response, or a Civil Rule 12 (CR 12) motion. The *Schedule* may be served by regular mail, with proof of mailing to be filed promptly in the form required by Civil Rule 5 (CR 5).

*"I understand that I am required to give a copy of these documents to all parties in this case."*

_____|_____

Print Name                                    Sign Name

Order Setting Civil Case Schedule (*ORSCS)                              REV. 12/08     1

**I. NOTICES (continued)**

**NOTICE TO ALL PARTIES:**
All attorneys and parties should make themselves familiar with the King County Local Rules [*KCLR*] -- especially those referred to in this *Schedule*. In order to comply with the *Schedule*, it will be necessary for attorneys and parties to pursue their cases vigorously from the day the case is filed. For example, discovery must be undertaken promptly in order to comply with the deadlines for joining additional parties, claims, and defenses, for disclosing possible witnesses [*See KCLCR 26*], and for meeting the discovery cutoff date [*See KCLCR 37(g)*].

**CROSSCLAIMS, COUNTERCLAIMS AND THIRD PARTY COMPLAINTS:**
A filing fee of **$200** must be paid when any answer that includes additional claims is filed in an existing case.

**KCLCR 4.2(a)(2)**
A Confirmation of Joinder, Claims and Defenses or a Statement of Arbitrability must be filed by the deadline in the schedule.  The court will review the confirmation of joinder document to determine if a hearing is required.  If a Show Cause order is issued, all parties cited in the order must appear before their Chief Civil Judge.

**PENDING DUE DATES CANCELED BY FILING PAPERS THAT RESOLVE THE CASE:**
When a final decree, judgment, or order of dismissal of all parties and claims is filed with the Superior Court Clerk's Office, and a courtesy copy delivered to the assigned judge, all pending due dates in this *Schedule* are automatically canceled, including the scheduled Trial Date. It is the responsibility of the parties to 1) file such dispositive documents within 45 days of the resolution of the case, and 2) strike any pending motions by notifying the bailiff to the assigned judge.

Parties may also authorize the Superior Court to strike all pending due dates and the Trial Date by filing a *Notice of Settlement* pursuant to KCLCR 41, and forwarding a courtesy copy to the assigned judge. If a final decree, judgment or order of dismissal of all parties and claims is not filed by 45 days after a *Notice of Settlement*, the case may be dismissed with notice.

**If you miss your scheduled Trial Date**, the Superior Court Clerk is authorized by KCLCR 41(b)(2)(A) to present an *Order of Dismissal*, without notice, for failure to appear at the scheduled Trial Date.

**NOTICES OF APPEARANCE OR WITHDRAWAL AND ADDRESS CHANGES:**
*All parties to this action must keep the court informed of their addresses.* When a Notice of Appearance/Withdrawal or Notice of Change of Address is filed with the Superior Court Clerk's Office, parties must provide the assigned judge with a courtesy copy.

**ARBITRATION FILING AND TRIAL DE NOVO POST ARBITRATION FEE:**
A Statement of Arbitrability must be filed by the deadline on the schedule **if the case is subject to mandatory arbitration** and service of the original complaint and all answers to claims, counterclaims and cross-claims have been filed.  If mandatory arbitration is required after the deadline, parties must obtain an order from the assigned judge transferring the case to arbitration. **Any party filing a Statement must pay a $220 arbitration fee**. If a party seeks a trial de novo when an arbitration award is appealed, a fee of $250 and the request for trial de novo must be filed with the Clerk's Office Cashiers.

**NOTICE OF NON-COMPLIANCE FEES:**
All parties will be assessed a fee authorized by King County Code 4.71.050 whenever the Superior Court Clerk must send notice of non-compliance of schedule requirements and/or Local Civil Rule 41.

**King County Local Rules are available for viewing at www.kingcounty.gov/courts/clerk.**

## II. CASE SCHEDULE

| CASE EVENT | DEADLINE or EVENT DATE | Filing Needed |
|---|---|---|
| Case Filed and Schedule Issued. | Thu   07/29/2010 | * |
| Last Day for Filing Statement of Arbitrability without a Showing of Good Cause for Late Filing [See *KCLMAR 2.1(a)* and Notices on Page 2]. **$220 arbitration fee must be paid** | Thu   01/06/2011 | * |
| **DEADLINE** to file Confirmation of Joinder if not subject to Arbitration. [See *KCLCR 4.2(a)* and Notices on Page 2]. | Thu   01/06/2011 | * |
| **DEADLINE** for Hearing Motions to Change Case Assignment Area. [See *KCLCR 82(e)*] | Thu   01/20/2011 | |
| **DEADLINE** for Disclosure of Possible Primary Witnesses [See *KCLCR 26(b)*]. | Mon   08/22/2011 | |
| **DEADLINE** for Disclosure of Possible Additional Witnesses [See *KCLCR 26(b)*]. | Mon   10/03/2011 | |
| **DEADLINE** for Jury Demand [See *KCLCR 38(b)(2)*]. | Mon   10/17/2011 | * |
| **DEADLINE** for Setting Motion for a Change in Trial Date [See *KCLCR 40(d)(2)*]. | Mon   10/17/2011 | * |
| **DEADLINE** for Discovery Cutoff [See *KCLCR 37(g)*]. | Mon   12/05/2011 | |
| **DEADLINE** for Engaging in Alternative Dispute Resolution [See *KCLCR 16(b)*]. | Tue   12/27/2011 | |
| **DEADLINE** for Exchange Witness & Exhibit Lists & Documentary Exhibits [See *KCLCR 4(j)*]. | Tue   01/03/2012 | |
| **DEADLINE** to file Joint Confirmation of Trial Readiness [See *KCLCR 16*] | Tue   01/03/2012 | * |
| **DEADLINE** for Hearing Dispositive Pretrial Motions [See *KCLCR 56; CR 56*]. | Mon   01/09/2012 | |
| Joint Statement of Evidence [See *KCLCR (4)(k)*]. | Tue   01/17/2012 | * |
| **DEADLINE** for filing Trial Briefs, Proposed Findings of Fact and Conclusions of Law and Jury Instructions (Do not file Proposed Findings of Fact and Conclusions of Law with the Clerk) | Tue   01/17/2012 | * |
| Trial Date [See *KCLCR 40*]. | Mon   01/23/2012 | |

### III. ORDER

Pursuant to King County Local Civil Rule 4 [*KCLCR 4*], IT IS ORDERED that the parties shall comply with the schedule listed above. Penalties, including but not limited to sanctions set forth in Local Civil Rule 4(g) and Rule 37 of the Superior Court Civil Rules, may be imposed for non-compliance. It is FURTHER ORDERED that the party filing this action **must** serve this *Order Setting Civil Case Schedule* and attachment on all other parties.

**DATED:**   07/29/2010

_____
**PRESIDING JUDGE**

Order Setting Civil Case Schedule (*ORSCS)                                        REV. 12/08   3

## IV. ORDER ON CIVIL PROCEEDINGS FOR ASSIGNMENT TO JUDGE

### READ THIS ORDER BEFORE CONTACTING YOUR ASSIGNED JUDGE
This case is assigned to the Superior Court Judge whose name appears in the caption of this case schedule. The assigned Superior Court Judge will preside over and manage this case for all pretrial matters.

**COMPLEX LITIGATION:** If you anticipate an unusually complex or lengthy trial, please notify the assigned court as soon as possible.

**APPLICABLE RULES:** Except as specifically modified below, all the provisions of King County Local Civil Rules 4 through 26 shall apply to the processing of civil cases before Superior Court Judges. The local civil rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx .

### CASE SCHEDULE AND REQUIREMENTS
Deadlines are set by the case schedule, issued pursuant to Local Civil Rule 4.

**THE PARTIES ARE RESPONSIBLE FOR KNOWING AND COMPLYING WITH ALL DEADLINES IMPOSED BY THE COURT'S LOCAL CIVIL RULES.**

### A. Joint Confirmation regarding Trial Readiness Report:
No later than twenty one (21) days before the trial date, parties shall complete and file (with a copy to the assigned judge) a joint confirmation report setting forth whether a jury demand has been filed, the expected duration of the trial, whether a settlement conference has been held, and special problems and needs (e.g. interpreters, equipment, etc.).

The form is available at http://www.kingcounty.gov/courts/superiorcourt.aspx . If parties wish to request a CR 16 conference, they must contact the assigned court. Plaintiff's/petitioner's counsel is responsible for contacting the other parties regarding said report.

### B. Settlement/Mediation/ADR
a. Forty five (45) days before the trial date, counsel for plaintiff/petitioner shall submit a written settlement demand. Ten (10) days after receiving plaintiff's/petitioner's written demand, counsel for defendant/respondent shall respond (with a counter offer, if appropriate).

b. Twenty eight (28) days before the trial date, a Settlement/Mediation/ADR conference shall have been held. FAILURE TO COMPLY WITH THIS SETTLEMENT CONFERENCE REQUIREMENT MAY RESULT IN SANCTIONS.

**C. Trial:** Trial is scheduled for 9:00 a.m. on the date on the case schedule or as soon thereafter as convened by the court. The Friday before trial, the parties should access the King County Superior Cour website http://www.kingcounty.gov/courts/superiorcourt.aspx to confirm trial judge assignment. Information can also be obtained by calling (206) 205-5984.

## MOTIONS PROCEDURES

### A. Noting of Motions

**Dispositive Motions:** All summary judgment or other dispositive motions will be heard with oral argument before the assigned judge. The moving party must arrange with the hearing judge a date and time for the hearing, consistent with the court rules. Local Civil Rule 7 and Local Civil Rule 56 govern procedures for summary judgment or other motions that dispose of the case in whole or in part. The local civil rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx.

**Nondispositive Motions:**  These motions, which include discovery motions, will be ruled on by the assigned judge without oral argument, unless otherwise ordered.  All such motions must be noted for a date by which the ruling is requested; this date must likewise conform to the applicable notice requirements.  Rather than noting a time of day, the Note for Motion should state "Without Oral Argument."  Local Civil Rule 7 governs these motions, which include discovery motions.  The local civil rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx.

**Motions in Family Law Cases not involving children:** Discovery motions to compel, motions in limine, motions relating to trial dates and motions to vacate judgments/dismissals shall be brought before the assigned judge.  All other motions should be noted and heard on the Family Law Motions calendar.  Local Civil Rule 7 and King County Family Law Local Rules govern these procedures.  The local rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx.

**Emergency Motions:**   Under the court's local civil rules, emergency motions will be allowed only upon entry of an Order Shortening Time.  However, emergency discovery disputes may be addressed by telephone call and without written motion, if the judge approves.

### B. Original Documents/Working Copies/ Filing of Documents

**All original documents must be filed with the Clerk's Office.**  Please see information on the Clerk's Office website at www.kingcounty.gov/courts/clerk regarding the new requirement outlined in LGR 30 that attorneys must e-file documents in King County Superior Court.  The exceptions to the e-filing requirement are also available on the Clerk's Office website.

The working copies of all documents in support or opposition must be marked on the upper right corner of the first page with the date of consideration or hearing and the name of the assigned judge.  The assigned judge's working copies must be delivered to his/her courtroom or the Judges' mailroom.  Working copies of motions to be heard on the Family Law Motions Calendar should be filed with the Family Law Motions Coordinator.  On June 1, 2009 you will be able to submit working copies through the Clerk's office E-Filing application at www.kingcounty.gov/courts/clerk.

**Service of documents.** E-filed documents may be electronically served on parties who opt in to E-Service within the E-Filing application.  The filer must still serve any others who are entitled to service but who have not opted in.  E-Service generates a record of service document that can be e-filed.  Please see information on the Clerk's office website at www.kingcounty.gov/courts/clerk regarding E-Service.

**Original Proposed Order:** Each of the parties must include an original proposed order granting requested relief with the working copy materials submitted on any motion.  Do not file the original of the proposed order with the Clerk of the Court.   Should any party desire a copy of the order as signed and filed by the judge, a pre-addressed, stamped envelope shall accompany the proposed order.

**Presentation of Orders:** All orders, agreed or otherwise, must be presented to the assigned judge.  If that judge is absent, contact the assigned court for further instructions.  If another judge enters an order on the case, counsel is responsible for providing the assigned judge with a copy.

Proposed orders finalizing settlement and/or dismissal by agreement of all parties shall be presented to the assigned judge or in the Ex Parte Department. Formal proof in Family Law cases must be scheduled before the assigned judge by contacting the bailiff, or formal proof may be entered in the Ex Parte Department. If final order and/or formal proof are entered in the Ex Parte Department, counsel is responsible for providing the assigned judge with a copy.

**C.    Form**

Memoranda/briefs for matters heard by the assigned judge may not exceed twenty four (24) pages for dispositive motions and twelve (12) pages for nondispositive motions, unless the assigned judge permits over-length memoranda/briefs in advance of filing. Over-length memoranda/briefs and motions supported by such memoranda/briefs may be stricken.

*IT IS SO ORDERED. FAILURE TO COMPLY WITH THE PROVISIONS OF THIS ORDER MAY RESULT IN DISMISSAL OR OTHER SANCTIONS. PLAINTIFF/PEITITONER SHALL FORWARD A COPY OF THIS ORDER AS SOON AS PRACTICABLE TO ANY PARTY WHO HAS NOT RECEIVED THIS ORDER.*

PRESIDING JUDGE

# CONFIRMATION RECEIPT

| | |
|---|---|
| Case Number: | 10-2-27688-2 SEA |
| Case Title: | Reynaldo D. Vinluan vs Fidelity National Title and Escrow Co. et al. |
| Submitted By: | Richard Jones |
| Bar Number: | 12904 |
| User ID: | jonesrl1 |
| Submitted Date/Time: | 7/29/2010 2:21:19 PM |
| Received Date/Time: | 7/29/2010 2:21:19 PM |
| Payment Reference: | 3529345251 |
| Total Cost: | $231.49 |

## DOCUMENTS

| | |
|---|---|
| Document Type: | COMPLAINT |
| File Name: | Vinluan_Complaint_072910.pdf |
| Attachment(s): | Vinluan_Exhibits A-I_Complaint_072910.pdf |
| Cost: | $0.00 |

| | |
|---|---|
| Document Type: | ORDER SETTING CASE SCHEDULE |
| File Name: | schedule.pdf |
| Cost: | $0.00 |

| | |
|---|---|
| Document Type: | CASE INFORMATION COVER SHEET |
| File Name: | cics.pdf |
| Cost: | $0.00 |

| | |
|---|---|
| Document Type: | SUMMONS |
| File Name: | Vinluan_Summons_072910.pdf |
| Cost: | $0.00 |

| | |
|---|---|
| Document Type: | NOTICE  RE OF DEFAULT |
| File Name: | Vinluan_Notice of Default_072910.pdf |
| Cost: | $0.00 |

Page 1 of 2

Printed On:                       7/29/2010 2:23:20 PM